The action stood continued nisi for advisement; and at the following March term in Suffolk, the opinion of the Court (excepting the Chief Justice, who did not sit in the cause) was delivered as follows by
Sewall, J
The plaintiff’s demands, when specified, are, 1. The balance of his payments to Dodge and Webb, after deducting the net proceeds of the actual returns of their adventures in the brig Pompey.
2. A difference in the calculation of profits upon the same adventures ; the profits, as taken at Bourdeaux, and there credited to the defendant, exceeding the estimated profits in the adjustment at Salem,
* The damages and loss in that adjustment, sustained [ * 699 ] immediately by the plaintiff, were, it is said, an expense incurred in the voyage conducted by him for the benefit of the defendant, so far as the adventures of Dodge and Webb were concerned ; and although a consequence of a breach of orders by the plaintiff in changing his destination, yet the defendant, by his subsequent assent in taking to the voyage as performed, and accepting the sales at Bourdeaux, and the investments made there of the proceeds, submits himself to all consequences; at least to all expenses fairly and necessarily incurred in the voyage, as it was eventually performed.
Admitting the justice of the plaintiff’s claim in this view of it, still, as it is not pretended that the award by referees chosen between *612 Dodge and Webb and the plaintiff, without the concurrence of the defendant, is conclusive upon him, the whole question between the parties in the case at bar remains open, and is to be decided upon the evidence now adduced. And to entitle the plaintiff, it must appear that the defendant was originally liable upon his contract with Dodge and Webb for the carriage of their adventures, under circumstances and in a case, which would not entitle the defendant to any recourse against the plaintiff, as master of the vessel, to the amount recovered against him by Dodge and Webb.
It seems to have been understood that Dodge and Webb were entitled, and that they, in fact, recovered against Captain Gilchrist, in consequence of the change of destination in his passage from Sumatra, without taking advice at Cowes. This was done contrary to the orders agreed upon with the owners, and contrary to the tenor of the bills of lading signed at Sumatra. The advantageous sales of the pepper taken for the owners and freighters at Sumatra were the inducement for the deviation ; but where the master had no discretion allowed him, this inducement afforded no justification, until the proceeding was sanctioned by the assent of the concerned. Such a change in the destination might have proved a loss of insurance both to the owners and freighters. And it is well understood that one consequence of a voluntary deviation from the course of a voyage agreed upon is, that the owners and master [*700 ] of the vessel employed incur the risk * of the goods carried on freight; and another consequence is, that the freighter is not to be compelled to receive his goods at any other than the place of destination. But although the shipper is not to 6e compelled, yet he is entitled to receive, and may, if he will, demand his goods at the port where they may happen to arrive after a voluntary deviation ; and his receipt of them there determines the risk of the carriers, who become entitled to their hire and commission, as upon a strict fulfilment of their contract. (2)
The destination of the Pornpey, or the market in Europe to which she was to proceed from Cowes, depended upon the advice of Mr. Williams. He was equally the agent, in this respect, of the owners and of Messrs. Dodge and Webb, who, for the purposes of this inquiry, are to be considered in the light of freighters. Mr. Williams appears to have expressed some disapprobation of the conduct of Captain Gilchrist in proceeding to Bourdeaux, or rather in fixing his market by his contract at the Isle of France.- But after full information of that contract, and after the arrival of the vessel at Bourdeaux, he notifies his authority from Dodge and Webb, and requires the com *613 pliance of Captain Gilchrist in the disposal of their adventures, and the remittance of the proceeds. These directions from the agent of Messrs. Dodge and Webb governed the subsequent proceedings of Captain Gilchrist, and by one of his letters, referred to in the case stated, he expressly advises” his owners that he shall remit and bring to America all the property which he had no positive orders to remit to London. This shows, at least, his understanding of the directions he had received from Mr. Williams. These directions were an acceptance by Dodge and Webb of their adventures at Bourdeaux, and the distinct deposit with Strobel and Martenez for the purposes of remittance to London was a separation of the proceeds of tile sales at Bourdeaux. It became impossible for Captain Gilchrist to manage afterwards the adventures of Messrs. Dodge and Webb, and the shipments for his owner, as a joint concern. If, in the manner of this deposit, or the continuance * of [ *701 J it, Captain Gilchrist was chargeable with unfaithfulness, indiscretion, or gross neglect, although he might thereby become liable to Messrs. Dodge and Webb, yet that would not be in a case where the captain could have recourse for an indemnity against his owners.
Upon the whole, the Court have not been able to perceive the grounds of the award between the plaintiff and Messrs. Dodge and Webb, or how they became entitled to refuse the actual returns of their adventures under the circumstances proved in the case at bar; or how Captain Gilchrist became liable to them for an inevitable loss happening, as the case now appears, without any gross neglect or misconduct on his part. But in any view of the case that has been suggested, the acceptance by Dodge and Webb of the proceeds of? the sales at Bourdeaux, appearing from what is proved of the intervention of Mr. Williams, determined the responsibility of the owners of the Pompey, and of the defendant upon his contract, for the carriage and disposal of their adventures.
This opinion determines also the question made upon the other items of the plaintiff’s demands. If the proceeds of the sales at Bourdeaux were lawfully deposited there to the account of Dodge and Webb, according to their share in the concern, and if the different destination of the owners’ and the freighters’ property necessarily separated their concern, then the amount of profits to be divided between Dodge and Webb and the defendant, upon his contract for the carriage of their adventures, was determined, and the proportion due to the defendant was justly placed to his credit; and no after estimate of the profits could operate to change the state of the account. Besides, the plaintiff at that time credited only what he had received, and what he had no title to retain on *614 his own account. He cannot claim this reimbursement as an indemnity ; for it made no part of his payments to Dodge and Webb; nor has he paid by mistake any sum to the defendant, for which he can be considered accountable to the plaintiff.
The verdict is to be set aside ; and it is the opinion of the Court that the plaintiff is not entitled, from the facts stated, to recover upon either of his demands against the defendant.

 Abbott on Shipping, part 3, c. 7, § 8.